UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HORAN,
    Plaintiff,

v.

REEBOK INT'L LTD.,
    Defendant.

No. 3:08cv663 (SRU)

## RULING ON MOTION IN LIMINE

The plaintiff in this case, Bryan Horan ("Horan"), was a college hockey player who wore a face mask manufactured by the defendant, Reebok International Ltd. ("Reebok"). During one game, while Horan was wearing the defendant's mask, the butt of a hockey stick passed through a gap in the mask and hit his eye, permanently blinding him in that eye. Reebok now moves to have the jury given an introductory charge ("pre-charge") on the modified consumer expectation theory. Doc. #66. Reebok also asserts that only the modified consumer expectation theory, and not the ordinary consumer expectation theory, applies in this case. For the reasons that follow, Horan's claim may proceed to trial under the ordinary consumer expectation theory, and Reebok's motion in limine is **DENIED**.

**I.    Background**

Horan was a member of Providence College's men's hockey team. As a member of the team, he wore, in addition to other protective gear, a helmet and face mask. The face mask was manufactured by Reebok, and was a Reebok Model 480 ("Model 480"). The mask is a wire grid that covers a player's entire face. The wires are composed of carbon steel and the gaps within the gridding are approximately between 1.25"-1.5" x 1.5". *See* Def. Ex. 2 (photographs of mask from various angles).

On February 23, 2007, Horan was playing in a game against the University of New Hampshire ("UNH").  During a play for a loose puck, a UNH player struck Horan in the right eye with the butt of his hockey stick, which had passed through a gap in Horan's mask.  Horan was permanently blinded in that eye and, according to the amended complaint, he continues to "suffer from extreme mental anxiety and physical pain."  Amend. Compl. at ¶ 11.

On April 30, 2008, Horan filed this suit in federal court against Reebok, claiming design defect, inadequate warning, and a claim for punitive damages.  On August 30, 2010, Reebok filed a motion for summary judgment.  I denied that motion during a hearing held on December 10, 2010.  Both parties have subsequently filed motions in limine.  I take up one of those motions, doc. #66, at this time.

## II.  Discussion

One of the parties' principal disputes is whether the jury should apply the consumer expectation test or the modified consumer expectation test when determining whether the Model 480 mask was defective.

In Connecticut, in order to hold a defendant strictly liable for a defective product, the plaintiff must prove:

> (1) the defendant engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition.

*Potter v. Chicago Pneumatic Tool Co.*, 241 Conn. 199, 214 (1995).  Under the consumer expectation test, a product is considered "unreasonably dangerous" if it is "dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."  *Id*. at 214-15

(quoting 2 Restatement of Torts (Second) § 402A, comment (i)).  "[T]he ordinary consumer expectation test is appropriate when the everyday experience of the particular product's users permits the inference that the product did not meet minimum safety expectations."  *Id.* at 222.

When "the particular facts do <u>not</u> reasonably permit the inference that the product did not meet the safety expectations of the ordinary consumer," the jury should then consider, instead, the modified consumer expectation test (emphasis added).  *Id.* at 222-23.  The modified consumer expectation test incorporates a risk-utility analysis.  A jury applying the modified test may consider:

> the usefulness of the product, the likelihood and severity of the danger posed by the design, the feasibility of an alternative design, the financial cost of an improved design, the ability to reduce the product's danger without impairing its usefulness or making it too expensive, and the feasibility of spreading the loss by increasing the product's price.

*Id.* at 221.  "[I]t is the function of the trial court to determine whether an instruction based on the ordinary consumer expectation test, or the modified consumer expectation test, or both, is appropriate in light of the evidence presented."  *Id.* at 223

Reebok now seeks to have the jury instructed on the modified consumer expectation test in the pre-charge.  Doc. #66.  Horan argues that is inappropriate, because the ordinary consumer expectation test, not the modified consumer expectation test, should apply in this case.

Reebok contends that the modified consumer expectation test applies because the average juror lacks substantial enough familiarity with hockey masks to make an informed decision about them.  Reebok is mistaken, however, about who the "ordinary consumer" in the ordinary consumer expectation test is.  It is not the average layperson, but instead is the average user of the product in question.  *See Potter*, 241 Conn. at 222, 224 ("[T]he ordinary consumer expectation test is appropriate when the everyday experience of the <u>particular product's users</u> permits the inference that the product did not meet minimum safety expectations.") (emphasis

added); *see also Izzarelli v. R. J. Reynolds Tobacco Co.*, --- F. Supp. 2d ---, 2011 WL 3803900, at *9 (D. Conn. Aug. 26, 2011) (plaintiff produced evidence that ordinary consumer was a beginning smoker); *Johannsen v. Zimmer, Inc.*, No. 3:00cv2270, 2005 WL 756509, at *8 (D. Conn. Mar. 31, 2005) (ordinary user was the ordinary buyer of hip prostheses). Therefore, the ordinary consumer here is the ordinary consumer of hockey masks.

Reebok's argument that the ordinary consumer would not be able to form expectations of safety regarding the Model 480 mask is unconvincing. The Model 480 mask is a relatively simple product, and Horan has presented sufficient evidence to indicate that a reasonable juror could find that the mask is dangerous to an extent beyond which would be contemplated by the ordinary consumer. *See, e.g.*, Pl.'s Summ. J. Ex. 2 at 46-47 (deposition of UNH coach Richard Umile that he was unaware of risk, but admitting that he "never thought about the butt end getting through the cage, to be honest"); Pl.'s Summ. J. Ex. 31 ¶ 9 (affidavit of Bryan Horan that "[u]ntil I was injured . . . I was not aware that such a penetration was possible, especially when the butt end of the stick was taped"); Pl.'s Summ. J. Ex. 32 at 210-11 (deposition of Providence College coach Tim Army that he was unaware of risk); Pl.'s Summ. J. Ex. 33 ¶ H (affidavit of Girard McDonald, father of Horan's teammate and former college and professional hockey player, that before Horan's injury "I did not know that the butt end of a hockey stick could penetrate a full wire cage mask such as worn by Bryan Horan the night of his injury"). Therefore, as I noted in the summary judgment hearing, the case may proceed to trial under an ordinary consumer expectation theory. I leave open the possibility that the case can also proceed under a modified consumer expectation theory.[1]

---

[1] Although Horan now argues that the ordinary consumer expectation test should be the operative test in this case, doc. # 95, during the summary judgment hearing Horan's counsel stated that he would seek to have the jury charged on both the ordinary consumer expectation test and the

Nothing in this ruling is intended to preclude Reebok from petitioning the court, at the close of evidence, to instruct the jury on the modified consumer expectation theory. At this time, however, I cannot say that I will do so, and thus it is not appropriate to include the requested language in the pre-charge to the jury. Accordingly, Reebok's motion to include an instruction on the modified consumer expectation theory in the pre-charge is denied.

### III. Conclusion

For the reasons stated above, the defendant's motion in limine concerning the pre-charge, doc. #66, is **DENIED**.

It is so ordered.

Dated at Bridgeport, Connecticut, this 29th day of September 2011.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

---

modified consumer expectation test. Presumably that is still true. In any case, it is a matter that can be decided during the charge conference.